**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**MARCUS MONCHERY,**

Plaintiff,

v. Civil Action No. **3:24CV676 (RCY)**

**L. CHUMNEY, *et al.*,**

Defendants.

## MEMORANDUM OPINION

Marcus Monchery, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action[1] alleging that he was denied adequate medical care in violation of the Eighth Amendment while housed in the Baskerville Correctional Center. The matter is presently before the Court on a Motion to Dismiss filed by Defendant R. Whitt. For the reasons stated below, the Motion to Dismiss will be GRANTED.

## I. PROCEDURAL HISTORY

The action proceeds on Monchery's Particularized Complaint (hereinafter simply, "Complaint"). ECF No. 20. The remaining Defendants are Assistant Warden R. Whitt and Dr. Gamez.[2] On September 12, 2025, Defendant Whitt filed the instant Motion to Dismiss. ECF No.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] By Memorandum Order entered on November 17, 2025, the Court dismissed Defendants RN L. Chumney and M.S.C. Health Services Director/Level 2 Respondent as parties to the action, because Monchery failed to serve them in a timely manner. ECF No. 40.

Dr. Gamez separately filed a Motion for Summary Judgment that will be addressed in a forthcoming opinion. The Court DIRECTS the clerk to update the spelling of Dr. Gamez's name on the docket.

32. The Court provided Monchery with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), *see* ECF No. 34, and Monchery timely responded, ECF No. 38. Whitt did not file a reply, and the time to do so has passed. The matter is accordingly ripe for review.

## II. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). For a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. MONCHERY'S ALLEGATIONS

In his Complaint, Monchery alleges[3] as follows:

> 1. On or about 12/7/23 while incarcerated at Baskerville Correctional Center, Plaintiff requested an MRI for an injury sustained while at NRADC[[4]] that he still had not received – which he believed to be a torn meniscus.
> 2. Subsequent to the request, Plaintiff was directed to attend daily sick call, available Monday through Friday at 7:00 a.m.
> 3. On or about December 17, 2023, Plaintiff went to sick call requesting a Magnetic Resonance Imaging (MRI) scan, expressing concern that he had experienced a meniscus tear.
> 4. After Plaintiff's initial visit he had to return several times to complain about his knee before he was put in to receive an x-ray. Plaintiff had previously undergone an x-ray of his knee at NRADC, and Plaintiff signed a "Consent to Release" form for his medical records from NRADC that a nurse was supposed to obtain for review after she received them.
> 5. Plaintiff communicated to Nurse Chumney and Dr. Gamez that the x-ray did not reveal the injury, explaining that his pain was likely located in the soft tissues, such as ligaments or tendons, which are not visible on an x-ray, thereby necessitating an MRI.

---

[3] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Monchery's submissions.

[4] Monchery does not define NRADC; however, the Court believes this to be the Northwestern Regional Adult Detention Center in Winchester, Virginia.

6. Despite Plaintiff's explanation, Nurse Chumney and Dr. Gamez informed Plaintiff that existing protocols mandated another x-ray examination prior to the scheduling of any MRI.

7. Plaintiff underwent a second knee x-ray on December 19, 2023. Dr. Gamez stated that the radiological findings from this x-ray indicated "an absence of fractures, abnormalities or dislocations, but did note the presence of degenerative changes."

8. Plaintiff repeatedly conveyed his ongoing knee pain and swelling to Nurse Chumney and Dr. Gamez and requested an MRI.

9. Nurse Chumney and Dr. Gamez consistently declined to schedule the requested MRI for Plaintiff.

10. On or about January 8, 2024, Plaintiff received medical attention from a nurse after filing another sick call complaining about pain to his knee.

11. Plaintiff had an appointment scheduled to see a physician on January 11, 2024. However, Plaintiff's name was subsequently removed from the appointment roster.

12. Upon receiving paperwork related to his lab results, Plaintiff formally documented a complaint regarding the cancellation of his physician's appointment.

13. Plaintiff was later scheduled to see a physician and was examined by Dr. Gamez on January 17, 2024. While there, plaintiff again notified Nurse Chumney and Dr. Gamez that his knee pain persisted and that an MRI was required to ascertain the exact nature of the damage. Nurse Chumney and Dr. Gamez again refused to authorize the MRI procedure.

14. Over one year after the initial injury, Plaintiff's left knee continued to exhibit swelling and pain, indicating a serious and unresolved medical condition.

15. The lack of proper diagnosis and treatment for Plaintiff's knee injury directly led to the exacerbation of his condition and the development of additional medical complications including a bone spur affecting his foot, while Plaintiff identified and received arch support insoles before his departure from Baskerville.

16. Plaintiff received a response from Nurse Chumney to his written complaint the week of January 21, 2024, and during the week of January 26, 2024, Plaintiff submitted a formal grievance in response to Nurse Chumney's reply concerning the medical care he was receiving.

17. The week of February 27, 2024, Assistant Warden R. Whitt provided a response to Plaintiff's grievance, stating the grievance was deemed "Unfounded." Assistant Warden R. Whitt, holding supervisory position [] over Nurse Chumney and Dr. Gamez, declined to overturn their decision concerning the MRI.

. . . .

20. In April of 2024, Plaintiff attended two physical therapy sessions at In Motion Physical Therapy located in Richmond, VA.

21. During his second physical therapy session, physical therapist Cody Bryant, evaluated Plaintiff's left knee. Based on his observation of the knee's condition and comparison to the right knee, Mr. Bryant confirmed that Plaintiff's symptoms were indicative of a meniscus tear.

22. Mr. Bryant further conveyed that an MRI was essential for a precise diagnosis of the knee injury's nature and extent, and to guide appropriate

> rehabilitative measures. Plaintiff had not received an MRI prior to commencing physical therapy.
>
> 23. On or about April 15, 2024, Mr. Bryant provided Plaintiff with documentation detailing prescribed stretches and stability exercises for his knee.
>
> 24. Plaintiff's follow-up physical therapy appointments were scheduled for approximately two more weeks. However, Plaintiff was transferred to Green Rock Correctional Center before his last two appointments could take place.

Compl. at 2–4, ECF No. 20.

Under the header "COUNT 3," Monchery raises the following claim against R. Whitt:

> Despite [his] awareness and his supervisory authority, Defendant Assistant Warden R. Whitt acted with deliberate indifference to [Monchery's] serious medical need by
>
> [a] Upholding the denial of proper diagnostic care (MRI) after [Monchery's] grievance, despite knowing of [his] persistent pain and the prior refusals by medical staff[;]
>
> [b] Failing to intervene or direct medical staff to provide appropriate treatment or diagnostic procedures, thereby perpetuating the denial of care[; and]
>
> [c] Sanctioning the inadequate medical treatment provided to [Monchery].

*Id.* at 7–8. Monchery demands monetary damages and injunctive relief in the form of terminating R. Whitt's employment. *Id.* at 10.

## IV. ANALYSIS

### A. No Supervisory Liability

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the

deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

Monchery seemingly believes that R. Whitt, as the Assistant Warden, was the supervisor of the medical staff. That is highly doubtful. Nevertheless, contrary to Monchery's suggestion, R. Whitt is not liable simply because he may have supervised other individuals who may have violated Monchery's rights. *See Vinnedge*, 550 F.2d at 928. To the extent that Monchery intends to impose liability on R. Whitt solely because of his role as an administrator under a theory of *respondeat superior*, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[5] Accordingly, any claim based on supervisory liability will be DISMISSED.[6]

**B. Alleged Eighth Amendment Violations**

To state an Eighth Amendment claim, an inmate must allege facts showing "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v.*

---

[5] To the extent that Monchery contends that R. Whitt is somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (cleaned up). Monchery fails to allege facts that support any one of these three factors.

[6] To the extent that Monchery argues that R. Whitt was responsible for policies or procedures that led to his allegedly inadequate medical care, such a claim would fail. To state such a claim, Monchery must plead facts indicating that: (1) R. Whitt had an official policy or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifference to Monchery's Eighth Amendment rights; and (3) that this policy or custom caused or contributed to the cause of Monchery's allegedly inadequate medical care. *See Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). Monchery again fails to allege any one of these three factors.

*Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Quinones*, 145 F.3d at 167.

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of

harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

Stating an Eighth Amendment claim for denial of adequate medical care in prison requires allegations of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

**1. Count 3[a]**

In Count 3[a], Monchery argues that R. Whitt was deliberately indifferent to his serious medical needs by "[u]pholding the denial of proper diagnostic care (MRI) after [Monchery's] grievance, despite knowing of [his] persistent pain and the prior refusals by medical staff." Compl. 8. Monchery appears to hold R. Whitt liable simply for his involvement in the grievance review process. However, that conclusory allegation fails to state a claim.

As an initial matter, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017);

*see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Because Monchery enjoys no constitutional right to participate in grievance proceedings, his allegation that R. Whitt improperly determined Monchery's grievance to be unfounded or somehow responded unfavorably to Monchery is legally frivolous. *See Banks v. Nagle*, Nos. 3:07CV–419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (citation omitted); *see also DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) (observing that "a superior's after–the–fact denial of a grievance falls far short of establishing § 1983 liability"). Indeed, simply "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007); *cf. Chamberlain v. Clarke*, No. 7:14–cv–00013, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non–starter"). To the extent that Monchery faults R. Whitt for finding his grievance unfounded, he fails to state a claim for relief and such a claim is legally frivolous.

Monchery also fails to allege facts that plausibly suggest "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Monchery must allege that R. Whitt "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)). Monchery, at most, complains that R. Whitt determined that a grievance was unfounded in the face of Monchery's complaint that doctors had not sent him for an MRI. Monchery's allegations fall short of permitting the conclusion that Monchery's single regular

grievance placed R. Whitt on sufficient notice of an excessive risk of harm to Monchery's health or safety. For these reasons, Count 3[a] will be DISMISSED for failure to state a claim and as legally frivolous.

Further, as discussed below, as an administrative, non-medical supervisor, R. Whitt was entitled to rely on the professional judgment of medical staff.

**2. Count 3[b] and [c]**

In Count 3[b] and [c], Monchery faults R. Whitt for "[f]ailing to intervene or direct medical staff to provide appropriate treatment or diagnostic procedures, thereby perpetuating the denial of care" and "[s]anctioning the inadequate medical treatment provided to Plaintiff." Compl. 8. At the base of his claims, Monchery apparently wanted an MRI on a more expedited basis. However, the law plainly provides that Monchery was not entitled to the medical care of his choosing. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *Bowring*, 551 F.2d at 48 ("disavow[ing] any attempt [of the Court] to second-guess the propriety or adequacy of a particular course of treatment").

R. Whitt was only personally involved because on February 27, 2024, he found a grievance unfounded in which Monchery complained that he had not received an MRI. However, despite his dissatisfaction with not receiving an MRI, Monchery's allegations reflect that he *was* receiving medical care for his knee.[7] R. Whitt knew that Monchery was frequently seen by and treated by the medical department. Monchery was under the care of many medical providers, and R. Whitt, who served in an administrative, non-medical role, was entitled to rely on the medical judgment of those providers with respect to the appropriate treatment of Monchery. *Iko v. Shreve*, 535 F.3d

[7] Monchery's complaints about his knee began on December 7, 2023, and ended in April of 2024, when he was transferred to a different institution. This was not a prolonged period of time to wait for an MRI when he was receiving other medical care.

225, 242 (4th Cir. 2008) (holding that once an inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))).

Monchery faces a fairly onerous task in alleging deliberate indifference in the present circumstances because reliance upon the expertise of prison medical providers in treating inmates is generally appropriate for supervisory officials, such as R. Whitt in his role as an administrator. To overcome such reliance, Monchery must allege facts indicating that R. Whitt knew that the care provided by medical personnel was so obviously incompetent that it posed a substantial risk of harm to his health. *See Miltier*, 896 F.2d at 854–55. Put simply, he has not. While Monchery believed that he required an immediate MRI and clearly disagrees with the course and timing of treatment, his own allegations reflect that his medical care was clearly not so obviously incompetent to pose a substantial risk of serious harm to his health.[8] Rather, Monchery's allegations show that he received constitutionally adequate care for knee pain, including an x-ray, examinations by medical staff, and a referral to physical therapy. R. Whitt, as administrative, non-medical official staff, was entitled to rely on the medical opinions and course of treatment prescribed by the medical staff. Accordingly, Monchery fails to plausibly allege that R. Whitt was deliberately indifferent to his knee pain. Monchery fails to state an Eighth Amendment claim against R. Whitt, and Count 3[b] and [c] will be DISMISSED for failure to state a claim

[8] Although Monchery wanted an MRI of his knee at an earlier time, "[t]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray [or MRI], or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107; *see Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) ("An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a 'a classic example of a matter for medical judgment.'" (citing *Estelle*, 429 U.S. at 107)). R. Whitt could rely on the medical staff's determination of whether an MRI was appropriate at that time.

## V. CONCLUSION

The Motion to Dismiss (ECF No. 32) will be GRANTED. Count 3 will be DISMISSED for failure to state a claim and as legally frivolous. R. Whitt will be DISMISSED as a party to the action.

An appropriate Order will accompany this Memorandum Opinion.

/s/ RCY
Roderick C. Young
United States District Judge

Date: August 20, 2026
Richmond, Virginia